IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CITY OF MULBERRRY, KANSAS;
LINDY RHODES; CHRIS BARRETT;
ROBIN BARRETT; AND KEN COLLINS;

        Plaintiffs

    v.                                    No. 21-2227-SAC-JPO

BP ENERGY COMPANY,

        Defendant.

MEMORANDUM AND ORDER

This case comes before the court on the plaintiffs' motion to remand. ECF# 8. The defendant BP Energy Company ("BP") removed this action from the District Court of Crawford County, Kansas, on May 18, 2021, claiming federal jurisdiction based on complete diversity of citizenship between the parties and an amount in controversy exceeding $75,000.00. ECF# 1. In their state court petition, the plaintiffs allege that during the power outages and energy outages caused by the winter weather disaster in February of 2021, the defendant BP charged unconscionable prices for the natural gas supplied to the plaintiff City of Mulberry ("City") and its residents. They allege that BP's gas prices invoiced to the City between February 10 and 22 of 2021, ranged from $4.05 to $329.61 for a MMBtu of gas, exceeding by more than 125% the invoiced price on February 9, 2021. ECF# 1-1, p. 8. When BP sent its March invoice of gas charges totaling $51,136.80, the City tendered a total payment of $9,479.59 and now claims any further payment would be "void and illegal pursuant to the profiteering provisions within the Kansas Consumer

1

Protection Act ("KCPA")." *Id*. Thus, the plaintiffs "bring this action to obtain a

declaratory judgment that any further invoice, request, or pursuit of payment would

violate the terms of the Kansas Consumer Protection Act and should be enjoined and

prohibited." *Id*. at 9. The plaintiffs include this key allegation limiting and waiving

the relief they seek:

> (28) Because the City of Mulberry and the Plaintiff Consumers have already
> paid the appropriate amounts pursuant to the Kansas Consumer Protection Act,
> they believe and allege that they are not entitled to further relief, such as
> damages, ancillary relief or civil penalties pursuant to K.S.A. 60-234(b), civil
> penalties pursuant to K.S.A. 60-236, or attorney fees pursuant to K.S.A. 50-
> 634(e). The City of Mulberry and the Plaintiff Consumers knowingly waive and
> reject all such entitlements.

*Id*. at 9. The plaintiffs ask for a declaratory judgment "that the City of Mulberry's

payment of 125% of the price of an MMBtu of gas on the day preceding the State of

Disaster ($2.98 on February 9, 2021) during each day of the disaster: (1) was proper,

appropriate and consistent with the provisions of the Kansas Consumer Protection Act;

and (2) any further request, invoice or pursuit of higher prices by Defendant BP for

gas delivered during that state of emergency should be enjoined and prohibited." *Id*.

at 9-10. This prayer for relief is specific to the City of Mulberry's payment, and it

does not include any relief addressing charges, invoices, or prices that BP may have

charged any of its other customers during the same winter disaster.

　　　　The plaintiffs move for remand to state court arguing the amount in

controversy does not exceed $75,000 as the plaintiffs have expressly waived and

rejected all relief other than this declaratory relief and the defendant's cost of

complying with the declaratory judgment would be less than $75,000. ECF## 8 and 9.

BP argues its potential cost of complying with a declaratory judgment that it violated

2

the KCPA in charging the daily index prices during the winter disaster would exceed

$75,000, because the judgment "would affect the legality of the prices BP Energy

charged other Kansas municipalities" using the same daily index price during the same

winter disaster period. ECF# 16, p. 6. BP also argues the plaintiff's waiver of penalties

and fees is not controlling as Kansas law does not limit a plaintiff's relief to that

sought in the petition. Finally, BP points to the City bringing this suit on behalf of its

residents and to the possibility that other residents could join the action and not be

bound by the plaintiffs' waivers.

Federal district courts have original jurisdiction over a civil action when

the amount in controversy is over $75,000 and when it is between citizens of different

state. 28 U.S.C. § 1332(a)(1). When the relief sought is declaratory or injunctive, "the

amount in controversy is measured by the value of the object of the litigation." *Hunt*

*v. Washington State Apple Advertising Commission*, 432 U.S. 333, 347

(1977)(superseded by statute on other grounds). The Tenth Circuit employs "the

'either viewpoint rule' which considers either the value to the plaintiff or the cost to

defendant of injunctive and declaratory relief as the measure of the amount in

controversy for purposes of meeting the jurisdictional minimum." *Lovell v. State*

*Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006) (citing *Justice v.*

*Atchison, Topeka and Santa Fe Ry. Co.*, 927 F.2d 503, 505 (10th Cir. 1991)). This rule

is still subject to the requirement "that each plaintiff . . . must individually satisfy

the amount in controversy requirement." *Id.* (citing *Snyder v. Harris*, 394 U.S. 332,

335 (1969)(superseded by statute on other grounds); *Lonnquist v. J.C. Penney Co.*,

421 F.2d 597, 599 (10th Cir. 1970)). The Supreme Court has made clear "from the

beginning that the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement" except "in cases in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant" or "in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Snyder v. Harris*, 394 U.S. at 335.

When removal is based on diversity jurisdiction, the amount in controversy is "deemed to be" the good faith sum "demanded . . . in the initial pleading." 28 U.S.C. § 1446(c)(2). The removal notice "may assert the amount in controversy if the initial pleading seeks . . . nonmonetary relief." 28 U.S.C. § 1446(c)(2)(A)(i). And, removal is proper based on the amount alleged in the removal notice "if the district court finds by the preponderance of evidence" that this amount exceeds $75,000. 28 U.S.C. § 1446(c)(2)(B). "[B]oth sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014). Because the defendant here is the party invoking federal jurisdiction, the burden is with it to prove the amount in controversy by a preponderance of evidence. *McPhail v. Deere & Co.*, 529 F.3d 947, 953 (10th Cir. 2008). "'To satisfy the preponderance standard, a party must show a reasonable probability that the [amount in] controversy exceeds' $75,000." *Derosa v. American Modern Select Ins. Co.*, No. 19-2380-DDC, 2019 WL 5102175, at *2 (D. Kan. Oct. 11, 2019) (quoting *Owens v. Dart Cherokee Basin Operating Co.*, No. 12-4157-JAR-JPO, 2015 WL 7853939, at *3 (D. Kan. Dec. 3, 2015) (internal quotations and citations

omitted)). The removing defendant "must prove contested facts," and if proven, then

the case remains "in federal court unless it is legally certain that less than $75,000 is

at stake." *McPhail*, 529 F.3d at 954 (internal quotation marks and citation omitted).

The removing defendant may prove these contested jurisdictional facts:

> "by contentions, interrogatories or admissions in state court; by calculation from the complaint's allegations; by reference to the plaintiff's informal estimates or settlement demands; or by introducing evidence in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands. The list is not exclusive; any given proponent of federal jurisdiction may find a better way to establish what the controversy between parties amounts to, and this demonstration may be made from either side's viewpoint (what a judgment would be worth to the plaintiff, or what compliance with an injunction would cost the defendant)."

*McPhail*, 529 F.3d at 954 (quoting *Meridian Security Ins. Co. v. Sadowski*, 441 F.3d

536, 541-42 (7th Cir. 2006)).

The United States Supreme Court has acknowledged that "individual

plaintiffs . . .  are the masters of their complaints, [and that] to avoid removal to

federal court, and to obtain a remand to state court, [they may] . . . stipulate to

amounts at issue that fall below the federal jurisdictional requirement." *Standard

Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013). The Supreme Court in *Knowles*

quoted from *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938),

"'If [a plaintiff] does not desire to try his case in the federal court he may resort to

the expedient of suing for less than the jurisdictional amount, and though he would

be justly entitled to more, the defendant cannot remove.'" 568 U.S. at 595. The "key

characteristic" in this situation is a stipulation binding "all plaintiffs" to claim less

than the jurisdictional amount. *Id.* Still, plaintiffs cannot wait until after removal to

reduce their damage claim under the jurisdictional amount by stipulation, averment,

5

or amendment of the complaint; this is because the original complaint at the time of removal is controlling and cannot be amended to divest the federal court of diversity jurisdiction. *St. Paul Mercury Indem. Co.*, 303 U.S. at 295; *see Mahoney v. KC Waterpark Management, LLC*, No. 18-2585-JAR, 2019 WL 161502, at *3 (D. Kan. Jan. 10, 2019). On the other hand, courts may consider a post-removal stipulation clarifying or confirming the amount in controversy. *See Young v. Home Depot U.S.A., Inc.*, No. 18-2411-JWL, 2018 WL 5775658, at *2 (D. Kan. Nov. 2, 2018); *Stanley v. Auto-Owners Insurance Company*, 423 F.Supp.3d 225, 229-30 (D.S.C. 2019)(When complaint does not specify a damage amount, the court may interpret a post-removal stipulation as a clarification of the plaintiff's damage claim).

As the masters of their original petition, the plaintiffs here expressly limit themselves to seeking only declaratory judgment relief and deny entitlement to any further relief. In addition, the plaintiffs have filed post-removal affidavits that stipulate they waive and forego "any claim for entitlement to relief other than declaratory relief." ECF## 9-1, 9-2, 9-3, and 9-4. Not only does the face of the petition at the time of removal establish the plaintiffs are claiming less than the jurisdictional amount, but their affidavits/stipulations further clarify and confirm that the plaintiffs are waiving entitlement to any relief other than declaratory relief. Courts have held that such stipulations are "binding through the doctrine of judicial estoppel, and the party's counsel is subject to Rule 11 sanctions if the party later attempts to recover more." *Puentes v. Res-Care, Inc.*, No. 20-1320-MV, 2021 WL 2688872, at *3 (D.N.M. Jun. 9, 2021) (citing *Carter-Reed Co., LLC v. Demulder*, 2014 WL 2048298, at *3 (D. Utah May 19, 2014)), *adopted* 2021 WL 2682793 (D.N.M Jun. 30,

6

2021); see *Stanley*, 423 F.Supp.3d at 230-231 (plaintiff's stipulation to not seek other relief is "binding and conclusive" and "is an express waiver made . . . by the party or his attorney conceding for purposes of the trial the truth of some alleged fact." (citing and quoting *Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of Law v. Martinez*, 561 U.S. 661, 130 S. Ct. 2971, 2983 (2010), and *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 133 S. Ct. 1345, 1348 (2013)); see also *Spence v. Centerplate*, 931 F.Supp.2d 779, 782 (W.D. Ky. 2013) ("the Court is convinced that Plaintiff will be constraining to recovering" in state court no more than stated in his binding stipulation). The court is convinced the plaintiffs' petition expressly limits all relief to a declaratory judgment and denies entitlement to any further relief, and their post-removal stipulations clarify and confirm the same and constitute binding stipulations that would be enforceable consistent with the authorities cited above.

BP's first argument is that its pecuniary cost in complying with an adverse declaratory judgment of a KCPA violation of unconscionability would exceed $75,000 as it would necessarily "extend[]" to all its other contracts with municipal customers. ECF# 16, p. 14. BP likens this suit to *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977), that sought a judicial interpretation of "state law regulating businesses." ECF# 16, p. 13. The similarity between *Hunt* and the case here stops with both involving declaratory relief. The plaintiff in *Hunt* was a state agency bringing an action in a representational capacity on behalf of its constituent apple growers and dealers to challenge the constitutionality of a state statute that regulated the displayed grading of closed container apples shipped into North Carolina. The state agency was suing on behalf of constituent apple growers

and dealers to have the state statute declared unconstitutional for discriminating against interstate commerce. The Supreme Court observed that the value of the declaratory judgment suit was the object of the litigation which was "the right of the individual Washington apple growers and dealers to conduct their business affairs in the North Carolina market free from the interference of the challenged statute" and the "value of that right is measured by the losses that will follow from the statute's enforcement." 432 U.S. at 347. The Court evaluated the losses already suffered and would continue to be suffered by the constituent growers and dealers because of the state statute.

Unlike *Hunt*, the plaintiffs here are not challenging the constitutionality of a state statute generally applicable to others. Instead, they challenge the conscionability of prices charged under a single gas contract. The plaintiffs here are not a state agency functioning like a trade association and suing in a representational capacity on behalf of other municipalities. Instead, they are a single municipality and some of its residents. The plaintiffs here challenge as unconscionable what BP specifically charged the City for gas under the City's Base Contract with BP during the winter weather disaster in February. This suit involves a single customer of BP and its contract with that customer. No other municipal customers of BP are parties to this suit, nor are there other contracts alleged in this suit. This suit does not purport to bring any claims in a representational capacity on behalf of other municipal customers of BP. The only municipal customer seeking declaratory relief in this suit is the City of Mulberry and its residents as third-party beneficiaries. A judicial adjudication of this suit as pleaded would not grant the broad declaratory relief that

BP is arguing for removal jurisdiction. More importantly, case law simply does not

recognize the aggregation of possible claims that BP is asserting here. *Cf. Lovell v.*

*State Farm Mut. Auto. Ins. Co.*, 466 F.3d at 897 ("When plaintiffs' claims arise from

individual contracts with a defendant, the plaintiffs are not suing to enforce a

common title or right to which they have a common and undivided interest."

(citations omitted); *Kincaid v. Home Depot U.S.A., Inc.*, No. 06-2061-CM, 2006 WL

1009241, at *2 (D. Kan. Apr. 18, 2006) (claims challenging customer contract

provisions as violating the Kansas Consumer Protection Act are subject to the non-

aggregation rule). At the very most, the plaintiff's requested declaratory relief

judgment **could** have arguable precedential force in **possible** suits brought by other

municipal customers of BP who are not even parties in this litigation. In a recent

decision, the Tenth Circuit rejected basing federal jurisdiction "on potential future

litigation involving the defendants":

> But Noble has made no cross-claim, nor has it shown any interest in bringing a separate lawsuit against DCP. This is fatal. Our precedents explain that the amount in controversy cannot be based on contingent, speculative, or collateral claims that could possibly occur as a result of the judgment. *See First Eng. Lutheran Church of Oklahoma City v. Evangelical Lutheran Synod of Kansas & Adjacent States*, 135 F.2d 701, 703 (10th Cir. 1943) (finding that the church's future charitable payments could not be used to determine the amount in controversy because it was "uncertain, contingent, and speculative"); *New England Mortg. Sec. Co. v. Gay*, 145 U.S. 123, 130, 12 S.Ct. 815, 36 L.Ed. 646 (1892) (finding the amount in controversy is "determined by the amount involved in the particular case, and not by any contingent loss either one of the parties may sustain by the probative effect of the judgment"); *Healy v. Ratta*, 292 U.S. 263, 267, 54 S.Ct. 700, 78 L.Ed. 1248 (1934) (finding that any "collateral effect" of a judgment "upon other and distinct controversies, may not be considered in ascertaining whether the jurisdictional amount is involved, even though their decision turns on the same question of law"); 14 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3702.5 (4th ed. 2020) ("A very important corollary to the measurement principle is that whatever the collateral effects a decree or judgment might have by virtue of stare decisis, collateral estoppel, or any

other impact on the rights or interests of third parties, those consequences
cannot be taken into account in calculating the amount in controversy.").

*Phelps Oil & Gas, LLC v. Noble Energy Inc.*, --- F.4th ---, 2021 WL 3046855, at *4 (10th

Cir. July 20, 2021). Even though the declaratory judgment here may turn on questions

of law resembling those raised in separate lawsuits between BP and its other

municipal customers, this collateral effect is not to be considered in determining the

jurisdictional amount. *Id.*

BP argues that under Kansas law the plaintiffs are not bound by their

waiver of relief in their state court petition, that their post-removal affidavits are

filed too late, and that the affidavits do not bind the other City residents listed on the

exhibit to the state court petition. The court is not persuaded by any of these

arguments. First, the plaintiffs in their state court petition expressly allege they

"bring this action to obtain a declaratory judgment that any further invoice, request

or pursuit for payment would violate the terms of the Kansas Consumer Protection Act

and should be enjoined and prohibited." ECF# 1-1, ¶ 27. The plaintiffs further allege,

"that they are not entitled to . . . damages, ancillary relief or civil penalties pursuant

to K.S.A. 60-234(b), civil penalties pursuant to K.S.A. 60-236, or attorney fees

pursuant to K.S.A. 50-634(e)." *Id.* at ¶ 28. Finally, the plaintiffs plead that they

"knowingly waive and reject all such entitlements." *Id.* As already noted above, the

plaintiffs have filed affidavits stipulating to the same. The court finds these to be

binding stipulations that would be enforceable as waivers or judicial estoppel based

on the legal precedent cited above. The court is convinced a state court would not

treat this case as an instance of a party simply failing to demand certain relief and

additional relief being granted as entitled. K.S.A. 60-254(c). Rather, the plaintiffs

here have expressly denied any entitlement to further relief and waived the same both by petition and stipulation thereby triggering the doctrines of judicial estoppel and waiver. Federal district courts in Kansas have recognized that a defendant cannot prevent remand when plaintiffs have done this. *See Eatinger v. BP America Production Co.*, 524 F.Supp.2d 1342, 1347-48 (D. Kan. 2007) (citing *Porter v. Merck & Co.*, No. 04-2572, 2004 WL 3682055, at \*2 (D. Kan. Dec. 29, 2004)). The court does not read the Kansas statute as otherwise precluding what the plaintiffs here have done openly and plainly. Finally, the plaintiffs have not filed their post-removal affidavits too late, as the affidavits merely clarify what is already alleged in their petition. And relying on *Phelps Oil & Gas,* the court rejects BP's speculation over other residents later joining the lawsuit and seeking other relief. Moreover, this would give rise to the plaintiffs' counsel facing likely sanctions.

The plaintiffs' state court petition expressly limits all relief to a declaratory judgment that has an individual value to the plaintiffs or a cost to the defendant that does not exceed $75,000. BP has not carried its burden of coming forward with jurisdictional facts under established law that show a reasonable probability of an amount in controversy exceeding $75,000. Thus, the court is legally certain that the plaintiffs' binding stipulations prevent them from recovering more than the declaratory relief pleaded in their state court petition which does not meet the jurisdictional amount requirement. The court, therefore, lacks subject matter jurisdiction under 28 U.S.C. § 1332(a) and remands this action to state court.

IT IS THEREFORE ORDERED that the plaintiffs' motion to remand this case to the District Court of Crawford County, Kansas, (ECF# 8) is granted. The Clerk

of the Court shall mail a certified copy of this remand order to the Clerk of the

District Court of Crawford County, Kansas.

Dated this 6th day of August, 2021, Topeka, Kansas.


/s Sam A. Crow_____
Sam A. Crow, U.S. District Senior Judge